KAREN P. HEWITT
United States Attorney
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney
California Bar. No. 201352
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7425

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ALMA LIDIA MARTINEZ-BERNAL,<br>Defendant. | Criminal Case No. 07CR2978-BTM<br><br>TRIAL DATE: January 14, 2008<br>TIME: 9:00 a.m.<br><br>**UNITED STATES' TRIAL MEMORANDUM** |

COMES NOW, the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and CHRISTOPHER M. ALEXANDER, Assistant United States Attorney, and hereby files its Trial Memorandum.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# I

## STATUS OF THE CASE

### A. INDICTMENT

On October 31, 2007, a federal grand jury in the Southern District of California returned an indictment charging Defendant Alma Lidia Martinez-Bernal ("Defendant") with knowingly and intentionally importing approximately 43.52 kilograms (95.74 pounds) of marijuana into the United States in violation of Title 21, United States Code, §§ 952 and 960; and knowingly and intentionally possessing, with the intent to distribute approximately 43.52 kilograms (95.74 pounds) of marijuana in violation of Title 21, United States Code, § 841(a)(1). After arraigning Defendant on November 1, 2007, the Court set a motion hearing for December 14, 2007.

### B. TRIAL STATUS

A jury trial is scheduled for Monday, January 14, 2008, at 9:00 a.m. The estimated length of trial is two days.

### C. STATUS OF COUNSEL

Defendant is represented by appointed counsel, Joseph McMullen.

### D. CUSTODY STATUS

Defendant is in custody.

### E. INTERPRETER

The United States will not need an interpreter for any of its exhibits.

### F. JURY WAIVER

Defendant has not filed a jury waiver.

### G. PRE-TRIAL MOTIONS

On December 14, 2007, the Court held a motion hearing. The Court accepted Defendant's waiver of a 3501 hearing. The Court also granted reciprocal discovery. The United States also provided oral notice of 404(b) evidence and expert testimony. The Court held this was sufficient. The Court set a trial date of December 18, 2007. On December 17, 2007, the trial date was continued to January 14, 2008. The Court scheduled a motions in limine date for January 11, 2008 with motions to be filed by January 4, 2008. On January 5, 2008, Defendant filed motions in limine. Since the United States

provided oral notice of 404(b) evidence and expert testimony on December 14, 2007, the United States has filed no motions.

**H. STIPULATIONS**

The parties have not entered into any stipulations.

**II**

**STATUS OF DISCOVERY**

The United States has complied with its discovery obligations and with Fed. R. Crim. P. 16(a), by providing notice of witnesses who will testify as experts and the subject matter of their anticipated testimony. Defendant has provided some discovery. The United States requests that any discovery not already produced, including expert discovery under Rule 16(b)(1)(C), be produced immediately.

**III**

**STATEMENT OF FACTS**

**A. The Apprehension**

On Friday, October 19, 2007, at approximately 1:00 p.m., U.S. Customs and Border Protection Officer Ernesto Chong was assigned to vehicle primary inspection lane number 4 at the Calexico, East, Port of Entry. A 2001 Chevrolet S-10 with Baja, California/Mexico license plate BM97064 ("the vehicle") approached the booth. The driver was identified as Alma Lidia Martinez-Bernal ("Defendant"). Officer Chong asked for and received a negative oral customs declaration from Defendant. Officer Chong asked the purpose of Defendant's visit to the United States. She stated that she was on her way to Wal-Mart. Officer Chong asked Defendant who owned the vehicle. She responded that her husband was the owner of the vehicle. Officer Chong requested the vehicle registration certificate. Defendant reached into the glove box and retrieved a Mexican vehicle registration. Then, Defendant said she was the registered owner of the vehicle as she held the Mexican vehicle registration certificate and that she owned the vehicle for about two months. Officer Chong noted that the dashboard of the vehicle appeared to have an anomaly during the inspection. Officer Chong escorted Defendant and the vehicle to the vehicle secondary lot for more intensive inspection.

Officer Chong requested that Canine Enforcement Officer Brent Phyburn perform a sweep of the vehicle for contraband with his assigned detector dog. Officer Phyburn noted that the dog alerted

to the dashboard area of the vehicle. Defendant was taken into the vehicle secondary lot office for a pat down for merchandise and weapons. The pat down produced a negative result.

Officer Chong inspected the dashboard area of the vehicle. After removing the glove box, Officer Chong observed a metal trap door leading to a specially manufactured compartment. Upon opening the door, Officer Chong saw several packages wrapped in black carbon paper. Officer Chong removed 28 packages from the dashboard compartment. Officer Chong probed one of the packages, producing a green leafy substance. A presumptive field test of the substance by Officer Chong gave a positive indication for the presence of marijuana. Officer Chong also examined the rest of the vehicle. He discovered an additional ten brick shaped packages in the vehicle's spare tire. A total of 38 packages were discovered with a combined weight of 43.52 kilograms.

Upon arriving at the Calexico East Port of Entry, Special Agent Joe Morquecho inspected the vehicle and discussed the seizure with Officer Chong. Law enforcement officers also seized various personal items from the vehicle including a cellular telephone, documents, clothing, change, and a purse.

The Mexican vehicle registration is in Defendant's name. Defendant had $46.00 dollars and over 1,800 in pesos on her person. The vehicle crossed into the United States at the Calexico East POE on Wednesday, October 10, 2007 at 12:56 p.m.; Friday, October 12, 2007 at 2:03 p.m.; and Wednesday, October 17, 2007 at 9:02 a.m. Defendant crossed into the United States at the Calexico East POE on Friday, October 12, 2007 at 2:03 p.m. and Wednesday, October 17, 2007 at 9:02 a.m.

**B. Defendant's Statement**

At approximately 4:56 p.m., Defendant was read his constitutional rights as per Miranda, in the Spanish language by Agent Galvan as witnessed by Agent Morquecho. Defendant stated that she understood her rights and agreed to waive her right to remain silent. She denied knowledge of the marijuana.

Defendant stated that the vehicle belonged to a friend and that she was going to work in the vehicle. Defendant said that the man who owned the vehicle was not a friend, but someone that was known to her. She explained that she is separated from her husband and that she usually has two jobs. However, for the last month, she has only had one job. Defendant said that she explained this to the man who owned the vehicle. He offered her a job driving a woman to and from various doctor's

appointments. The man asked her if she had a visa to cross into the United States. The man told her to take the vehicle into the United States to try it out and get used to it before driving the unknown woman around. Defendant said that this was the first time that she has driven the vehicle and that before today she had never seen the vehicle.

Defendant said a man known to her as Leo or Jorge was the owner of the vehicle. Defendant said she met Leo or Jorge on Saturday, October 13, 2007 at a dance. Defendant said she was going to Toys r Us to exchange some children's clothes. Defendant said she was picked up and taken to the vehicle, and said that she was escorted to the vehicle inspection lines at the POE.

When asked about Treasury Enforcement Communications System ("TECS") records that show her border crossing card associated with the vehicle license plate on two separate entries into the United States from Mexico, Defendant said that she thought that Agent Morquecho had asked if she had ever driven the vehicle before. Defendant said that the vehicle belonged to Jorge so she had seen it before when she had seen Jorge. Defendant said she had entered into the United States from Mexico on Wednesday, October 10, 2007 in the vehicle with Jorge driving.

Defendant said that she thought she would get paid $50.00 per trip when driving the unknown woman to her doctor's appointments. Defendant stated that the job was supposed to be on Wednesday's and Friday's. Defendant gave a contact number for Jorge as 116-8343. Defendant said that she did not know that there were drugs in the vehicle, and that she had already been paid $50.00 by Jorge as an advance for the upcoming trips with the unknown woman.

## IV

## PERTINENT LAW

### A. Elements of the Charged Offense

1. Title 21, United States Code, Sections 952 and 960

Essential elements of a violation of 21 U.S.C. §§ 952, 960 are:

a. Defendant intentionally brought marijuana into the United States; and

b. Defendant knew that it was marijuana or some other prohibited drug.

See 9th Cir. Crim. Jury Instr. 9.27 (2006).

2. Title 21, United States Code, Section 841(a)(1)

The essential elements of a violation of 21 U.S.C. § 841(a)(1) are:

a. Defendant knowingly delivered marijuana; and

b. Defendant knew that it was marijuana or some other prohibited drug.

9th Cir. Crim. Jury Instr. 9.15 (2006); United States v. Houston, 406 F.3d 1121, 1122 n.2 (9th Cir. 2005).

It does not matter whether the defendant knew that the substance was cocaine. It is sufficient that the defendant knew it was some kind of prohibited drug. To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction. 9th Cir. Crim. Jury Instr. 9.13 (2006).

## V

## PERTINENT LEGAL ISSUES

### A. Possession

Possession may be actual or constructive, and it may be proved by direct or circumstantial evidence. See United States v. Chambers, 918 F.2d 1455, 1457 (9th Cir. 1990). A defendant's mere possession of a substantial quantity of a controlled substance may show that the defendant knowingly possessed the substance. See United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989) (2.5 kilograms of cocaine sufficient to show knowledge and intent to distribute; secret compartment within a vehicle used to conceal illegal substances can raise an inference of connection between a defendant and the substance). Knowledge may also be proved by reasonable inferences from the high street value of the narcotics. See United States v. Ogbuehi, 18 F.3d 807, 812 (9th Cir. 1994) ("DEA agents can testify as to the street value of narcotics, . . . and counsel can argue reasonable inferences from it") (citation omitted); United States v. Golden, 532 F.2d 1244, 1247 (9th Cir.1976) ("value of the heroin found in the bags was relevant to both appellants' knowledge of the presence of the heroin and intent to distribute"); Gaylor v. United States, 426 F.2d 233, 235 (9th Cir. 1970) (testimony as to the selling price of cocaine was relevant to issue of knowledge, since it tended to refute "the possibility that a stranger could have placed such a valuable cargo in a vehicle in the hope that the vehicle could be followed and the cocaine later recovered in the United States").

The United States can prove the "intent to deliver" element based on the following: the manner in which the controlled substances were packaged, see United States v. Glenn, 667 F.2d 1269, 1292 (9th Cir. 1982); the secret compartment the drugs were concealed in within the vehicle, United States v. Sanchez-Lopez, 879 F.2d 541, 555 (9th Cir. 1989); and the high wholesale and retail street value of the drug. See Golden, 532 F.2d at 1247; United States v. Savinovich, 845 F.2d 834, 838 (9th Cir. 1988) (evidence of $100,000 street value of cocaine was relevant to proving the defendant's intent to distribute); United States v. Ramirez-Rodriguez, 552 F.2d 883, 885 (9th Cir. 1977) (evidence of resale value of drug probative of intent to distribute).

**B. Chain of Custody**

The United States may establish chain of custody to lay a proper foundation for admission of physical evidence if it is able to prove that a reasonable juror could find that the evidence is in substantially the same condition as when it was seized and if there is a reasonable probability the evidence has not been changed in important respects. United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991). "The government need only make a prima facie showing of authenticity, as 'the rule requires only that the court admit evidence if sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification.'" United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985) (quoting 5 J. Weinstein & M. Berger, Weinstein's Evidence Par. 901(a)[01], at 901-16 to -17 (1983)). Merely raising the possibility of tampering, however, is not enough to render evidence inadmissible. Id. Furthermore, a defect in the chain of custody goes to the weight, not the admissibility, of the evidence introduced. See United States v. Matta-Ballesteros, 71 F.3d 754, 768-69 (9th Cir. 1995), amended by, 98 F.3d 1100 (9th Cir. 1996).

## VI

## WITNESSES

The United States expects to call the following witnesses in its case-in-chief, although it reserves the right to change the order of these witnesses, substitute witnesses, add witnesses or omit one or more of these witnesses.

A. Customs and Border Protection Officer Ernesto Chong

B. Customs and Border Protection Canine Enforcement Officer Brent Pyburn

C. Immigration and Customs Enforcement Special Agent Joe Morquecho

D. Immigration and Customs Enforcement Special Agent Sara Galvan

E. Expert Witness Customs Special Agent Diana Lacuesta

F. Forensic Chemist Todd Davis

The United States intends to call Special Agent Lacuesta to testify as an expert witness regarding the wholesale value of marijuana (in Mexico ($150.00 per pound) and in the United States) and the whole sale ($300.00 per pound) and street value ($1,200.00 per pound) of the marijuana seized from Defendant in California. The Special Agent will opine as to what constitutes a personal use amount of marijuana (less than an ounce). The Special Agent will base these opinions upon training, education, and experience as a special agent for Immigration and Customs Enforcement.

The United States intends to call Forensic Chemist Davis as an expert witness in the field of forensic chemistry. It is anticipated that Forensic Chemist Davis will testify that, based on various scientific examinations conducted, the substance seized from Defendant was marijuana. Forensic Chemist Davis will base any opinions upon training, education, and experience in the field.

## VII

## EXHIBITS

The following is a partial list of the exhibits the United States intends to offer at trial. The United States reserves the right to add or remove exhibits from this list. The United States will provide a complete exhibit list prior to trial. The United States requests that Defendant examine the United States' exhibits before trial to expedite proceedings. The United States additionally requests a reasonable opportunity to examine Defendant's exhibits before trial.

1. Photograph of the Calexico East Port of Entry
2. Mexican Registration in Defendant's name
3. Photograph of the front of the vehicle
4. Photograph of the dashboard with glove box removed
5. Photograph of the dashboard with glove box removed and access plate removed
6. Photograph of the spare tire off the vehicle
7. Photographs of the marijuana on the rear of the vehicle

8. Photographs of the marijuana on table
9. Core samples of marijuana
10. Value Chart
11. DEA-7

## VIII

## <u>VOIR DIRE</u>

The United States requests that the following voir dire questions be addressed to the jury panel in addition to the Court's standard jury questions:

1. This case involves the distribution of marijuana in the United States. Does anyone have strong feelings about the laws of the United States relating to drugs? Does anyone believe that marijuana should be legalized? Would your views prevent you from being fair and impartial in this case?
2. The Court will instruct you about the law. Will you follow the law as given by the Court, even if you disagree with it?
3. Has any juror or a family member or close friend ever been arrested or the subject of an investigation by law enforcement? Would that experience prevent you from being fair and impartial?
4. The United States will call law enforcement officials as witnesses. Does anyone have any experience with, or knowledge of, any federal or state law enforcement agencies? If so, would that prevent you from being fair and impartial?
5. Has anyone had an unpleasant or negative experience with any law enforcement personnel? Would that cause you to be biased against law enforcement?
6. Has anyone had any disputes with an agency of the United States Government? If so, please describe.
7. Have you or any relatives or close friends ever been accused of, or charged with, a crime? If so, please explain.
8. Has anyone had any training in the law? If so, please explain.
9. Does everyone understand the differences between circumstantial and direct evidence

and that you must consider both in your deliberations? It is up to you to decide how much weight to give to any one piece of evidence. Will anyone have trouble giving circumstantial evidence the same weight as direct evidence?

10. Do you understand that you cannot consider any feelings of sympathy or pity you may have for the Defendant when deciding the facts of this case?

11. Does anyone feel that due to philosophical, moral, religious or other reasons, that he or she would have difficulty finding the defendant guilty even if the United States had proven its case beyond a reasonable doubt?

The United States respectfully reserves the right to submit additional questions prior to trial.

**IX**

**JURY INSTRUCTIONS**

The United States will provide the Court with a set of proposed instructions under separate cover. The United States reserves the right to submit additional instructions at the Fed. R. Crim. P. 30 conference. The Court is hereby respectfully requested to give whatever general instructions it deems appropriate.

DATED: January 9, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/ Christopher M. Alexander*
CHRISTOPHER M. ALEXANDER
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, ) Criminal Case No. 07CR2978-BTM
Plaintiff, )
v. ) CERTIFICATE OF SERVICE
ALMA LIDIA MARTINEZ-BERNAL, )
Defendant. )

IT IS HEREBY CERTIFIED THAT:

I, CHRISTOPHER ALEXANDER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the Trial Memorandum on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Joseph McMullen, Esq.
Atty for Defendant Alma Lidia Martinez-Bernal

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 9, 2008.

*s/Christopher M. Alexander*
CHRISTOPHER M. ALEXANDER